**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILMINGO JAMISON,** | : | **CIVIL ACTION NO. 1:08-CV-1405** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN KERESTES, ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA and YORK** | : | |
| **COUNTY DISTRICT ATTORNEY** | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) filed

pursuant to 28 U.S.C. § 2254 by petitioner Philmingo Jamison ("Jamison") and the

Report of the Honorable Martin C. Carlson, United States Magistrate Judge,

recommending that the Court grant Jamison habeas relief.  (Doc. 54).  The

respondent has filed objections to the magistrate's report and recommendation

("R&R").  (Doc. 58).  For the reasons set forth below, the Court will adopt in part,

and reject in part the R&R and grant habeas relief.

I.    **<u>Background</u>**[1]

In the early morning hours of July 19, 2000, in York, Pennsylvania, Dennis

Naylor was killed.  He was sitting in the front seat of his vehicle, parked in an area

---

[1] The magistrate judge's report recites the facts of this case in greater detail.
The factual background set forth in this opinion derives from the magistrate judge's
recitation of the facts, but it includes only those facts that are pertinent to the
objections.

known for drug trafficking and violence, when he sustained four gunshot wounds. (Doc. 12-3, at 82-84, 89-100).  Two eye witnesses to the crime identified the petitioner, Philmingo Jamison, as the killer.  Dereck Sease, the first eyewitness, initially named a New York drug dealer as the killer, but later changed his story and implicated Jamison. (Doc. 12-5, at 12-37).  The second eyewitness, Lizabeth Ray, first told authorities that Jamison and another individual both shot at Naylor after an argument erupted, but later claimed that Jamison was the sole shooter. (Doc. 12-7, at 8-31).  Police arrested Jamison and searched his home on August 3, 2000, recovering a firearm and ammunition. (Doc. 12-6, at 10-11).  Notably, the firearm and ammunition did not match any of the forensic evidence recovered at the scene of the crime.  In addition, fingerprints recovered at the scene failed to link Jamison to the killing.  (Id.)

When he was initially taken into custody, Jamison informed police that, on the night of the killing, he rode his bicycle to a bar, departed by himself just before closing, and rode straight home.  (Doc. 12-6, at 9-10).  In part, this account comported with the eyewitnesses that the killer was on a bicycle.  (See Doc. 12-5, at 17, 19; Doc. 12-7, at 16, 20).  In September 2000, police charged Jamison with first degree murder, third degree murder, involuntary and voluntary manslaughter in connection with the slaying. (Doc. 12, at 1-4).

Trial commenced on June 4, 2001 in the Court of Common Pleas of York County, Pennsylvania.  Jamison was represented at trial by now deceased attorney Harold Fitzkee, Esquire ("Attorney Fitzkee").  Prior to trial Attorney Fitzkee

noticed the government of his intention to present an alibi defense on behalf of

Jamison.  (Doc. 12-2, at 19).  At trial, however, Attorney Fitzkee made no attempt to

introduce an alibi defense.  Instead, the arresting officer, who testified during the

Commonwealth's case-in-chief, testified to Jamison's initial statement to the police

that he was at a bar across town on the night of July 19, 2000, and rode straight

home near closing time.  (Doc. 12-6, at 9-10).  Through this witness the

Commonwealth also established that Jamison's home address was within two and

one-half blocks of the crime scene.  (Doc. 12-6, at 12).

The arresting officer further testified to the search of Jamison's residence

that uncovered the weapon and ammunition.  (Doc. 12-6, at 10-11).  The following

exchange occurred:

| | |
|---|---|
| Commonwealth: | Tell the jury what you found in his home, what guns and ammunition you found in his home. |
| Detective Spence: | In a cigar box I found a bunch of nine millimeter rounds. I found a Ruger P95DC, which is a black semiautomatic handgun; another full box of nine millimeter ammo; a pair of silver nick's that was loaded with nine millimeter that was filled; a black bag which contained .45 caliber rounds and nine millimeter rounds; a Foot Locker bag which contained rifle ammunition and a box that had four shotgun rounds and other rifle ammunition. |
| Commonwealth: | So you found ammunition for a nine millimeter, a shotgun, a .45, but you only found one gun? |
| Detective Spence: | Right. |
| Commonwealth: | You didn't find any .40 caliber handgun? |
| Detective Spence: | No, I did not. |
| Commonwealth: | Did you find any gun or ammunition that matched any of the evidence in this case, the bullets that killed Dennis Naylor or the gun? |
| Detective Spence: | No, no ammunition or gun that matched the caliber that killed Mr. Naylor. |

<table>
<tr><td>Commonwealth:</td><td>In fact, Detective, you initially arrested Jermaine Johnson for this crime; is that correct?</td></tr>
<tr><td>Detective Spence:</td><td>Yes, we did.</td></tr>
</table>

(Doc. 12-6, at 10-11).  On cross-examination, Attorney Fitzkee again highlighted that neither the weapon nor the ammunition found in Jamison's home matched the weapon used to kill the victim.  (Doc. 12-7, at 1).  The Commonwealth further mentioned the weapon and ammunition in its opening and closing statements, both times indicating that it did not match the crime scene evidence.  (Doc. 12-3, at 85-86; Doc. 12-7, at 56).[2]

The two purported eye witnesses also testified as to what they saw in the early morning hours of July 19, 2000.  At the time of trial, both eye witnesses were in jail for their own crimes, Sease for selling drugs, Ray for theft, and both hoping that their testimony would result in leniency in the government and court's handling of their own cases. (Doc. 12-5, at 13; 12-7, at 8-10).  However, only Ray had an agreement with the government in exchange for her testimony.  (Doc. 12-5, at 13, 31; Doc. 12-7, at 9-10).  Both eyewitnesses identified the killer as Jamison and explained that he was riding a bicycle.  (Doc. 12-5, at 17, 19; Doc. 12-7, at 16, 20).

---

[2]  The Commonwealth first referred to the weapon and ammunition in its opening statement, telling the jury that the police "did a search of his house, found some guns, found some ammunition, none of which matched the .40 caliber gun that shot Dennis Naylor.  That gun hasn't been found today."  (Doc. 12-3, at 85-86).

Then, in closing, the prosecutor stated: "Did we find the gun?  Nope.  Did we find the ammunition?  Nope.  Searched his house, found .45's, nine millimeter gun, shotgun ammunition, nothing relevant."  (Doc. 12-7, at 56).

At the conclusion of the case, the trial judge instructed the jury on the charges against Jamison.  When instructing the jury on first degree and third degree murder, the trial judge inappropriately provided the jury with the penalties associated with a conviction of each crime.  (Doc. 12-7, at 71-72).  However, the trial judge did not inform the jury of the penalties for a conviction of voluntary or involuntary manslaughter, the remaining two charges against Jamison.  (Doc. 12-7, at 72-75).  When the judge asked counsel if there were any additions or corrections to the charges, Attorney Fitzkee responded in the negative.  (Doc. 12-7, at 75).  The jury returned a guilty verdict to the charge of third degree murder and Jamison was sentenced to 20 to 40 years imprisonment.

Jamison's initial appeal to the Pennsylvania Superior Court was dismissed on procedural grounds due to counsel's failure to file a statement of errors.  (Doc. 12-3, at 19).  However, the Pennsylvania Superior Court restored Jamison's direct appeal rights in 2003 subsequent to his filing of a *pro se* post conviction relief act petition.  (Doc. 12-3, at 19).  The Pennsylvania Superior Court affirmed his conviction on June 22, 2004.  (Doc. 12-3, at 18-25).  On July 13, 2005, Jamison filed a second *pro se* post conviction relief act petition challenging his conviction, raising ineffective assistance of counsel arguments.  (Doc. 2-1, at 4).  After a hearing on the petition, the trial judge denied Jamison's request for relief.  (Doc. 12-3, at 47).  The Pennsylvania Superior Court affirmed the denial on December 28, 2007 (Doc. 12-2,

at 14-19; Doc. 12-3, at 1-7),[3] and the Pennsylvania Supreme Court denied Jamison's request for allocatur on July 16, 2008. (Doc. 12-1, at 50).

Jamison filed the instant petition for writ of habeas corpus on July 8, 2008, asserting many of the same ineffective assistance of counsel claims that he previously presented to the state court in his second post conviction relief petition. (Doc. 1). Jamison claims that his trial counsel was ineffective for: (1) failing to object to the weapon and ammunition testimony and gang affiliation testimony; (2) neglecting to present an alibi defense; and (3) failing to object to the trial court's erroneous jury instruction providing the penalties for first and third degree murder. (Id.) On March 11, 2011, Magistrate Judge Carlson issued a report recommending that the Court grant Jamison relief and remand the matter to the York County Court of Common Pleas for a new trial. (Doc. 54, at 17). Judge Carlson concluded that Attorney Fitzkee provided ineffective assistance of counsel by failing to object to the admission into evidence of references to the "irrelevant" weapon and ammunition discovered in the search of Jamison's residence, the "unexplained and unjustified failure to present an alibi defense," (Doc. 54, at 37), and the failure to object to the jury instruction omitting the penalty information for manslaughter. The Commonwealth has filed numerous objections to Judge Carlson's factual and legal findings, asserting primarily that Judge Carlson mischaracterized and

_____

[3] The Pennsylvania Superior Court determined that the trial court's jury instruction was plainly erroneous and that the admission of the weapon and ammunition evidence was "questionable," but concluded the errors did not warrant post-conviction relief. (Doc. 12-3, at 6, 16-19).

improperly weighed the evidence in the record and incorrectly concluded that

Attorney Fitzkee provided ineffective assistance of counsel.  (Docs. 57, 58).

## II.    Standard of Review

### A.    Standard of Review for 28 U.S.C. § 2254 Habeas Petition

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper

mechanism for a prisoner to challenge the "fact or duration" of his confinement.

Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  However, "it is not the province

of a federal habeas court to reexamine state-court determinations on state-law

questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas

review is restricted to claims based "on the ground that [petitioner] is in custody in

violation of the Constitution or laws or treaties of the United States."  § 2254(a);

Estelle, 502 U.S. at 67-68; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v.

Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prescribes

the appropriate standard for a federal court to review the claims of a state prisoner

challenging his conviction.  See § 2254(d).  Federal courts must give deference to

the state trial and appellate court factual findings and conclusions.  An application

for a writ of habeas corpus premised on a claim previously adjudicated on the

merits in state court shall only be granted if :

> (1) [the state court decision] was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

(2) [the state court decision] was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

The Third Circuit interprets Supreme Court precedent on § 2254(d) to

involve three distinct legal inquiries.  Roundtree v. Balicki, --- F.3d ---, 2011 WL

1815965, at *5 (3d Cir. 2011) (citing Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770,

785 (2011)).

> The first is whether the state court decision was "contrary to . . .
> clearly established Federal law, as determined by the Supreme Court
> of the United States." § 2254(d)(1).  The second is whether the state
> court decision "involved an unreasonable application of" such law.
> § 2254(d)(1).  And the third is whether the state court decision "was
> based on an unreasonable determination of the facts in light of the
> evidence presented" to the state court. § 2243(d)(2).

Id. at *5.  Upon a finding that "the state court decision is not 'contrary to' the

applicable Supreme Court precedent," the reviewing court must "advance to the

second step in the analysis," which is to determine if "the state court decision was

based on an 'unreasonable application' of Supreme Court precedent." Outten v.

Kearney, 464 F.3d 401, 413-14 (3d Cir. 2006) (quoting Werts v. Vaughn, 228 F.3d 178,

197 (3d Cir. 2000)).  "[The reviewing court] should not grant the petition unless the

state court decision, evaluated objectively and on the merits, resulted in an outcome

that cannot reasonably be justified under existing Supreme Court precedent."  Id.

at 414 (quoting Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004)).  The court must

accord deference to the Pennsylvania Superior Court's findings.  "In order for a

reviewing federal court to find a state court's application of Supreme Court

precedent 'unreasonable,' the state court decision must be 'more than incorrect or

8

erroneous'; it must have been 'objectively unreasonable.'"  <u>Marshall v. Cathel</u>, 428

F.3d 452, 462 (3d Cir. 2005) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003)).

Finally, in reviewing the factual determinations of the state court, those

determinations "shall be presumed to be correct," and the petitioner has the

burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. §

2254(e)(1).

>    **B.**    **Standard of Review for a Magistrate Judge's Recommendation**

Where objections to a magistrate judge's report and recommendation are

filed, the court must perform a *de novo* review of the contested portions of the

report.  <u>Supinski v. United Parcel Serv.</u>, Civ. A. No. 06-0793, 2009 WL 113796, at *3

(M.D. Pa. Jan. 16, 2009) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1106 n. 3 (3d Cir.

1989); 28 U.S.C. § 636(b)(1)(c)).  "In this regard, Local Rule of Court 72.3 requires

'written objections which . . . specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for

those objections.'"  <u>Id.</u> (citing <u>Shields v. Astrue</u>, Civ. A. No. 07-417, 2008 WL

4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

**III.**   **Discussion**

In his § 2254 petition, Jamison contends that Attorney Fitzkee provided

ineffective assistance of counsel as a result of numerous errors during the course of

trial.  A claim for ineffective assistance of counsel is governed by the two-pronged

test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To prevail on an

ineffective assistance claim, a petitioner must show that: (1) counsel's

9

representation fell below an objective standard of reasonableness, and (2) the deficient representation was prejudicial to the petitioner.  Id. at 688; see also Albrecht v. Horn, 485 F.3d 103, 127 (3d Cir. 2007).  In determining whether counsel has met the objective standard of reasonableness, courts must be highly deferential towards trial counsel's conduct.  See Strickland, 466 U.S. at 686.  "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  There is a 'strong presumption' that counsel's performance was reasonable."  Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001) (alteration in original) (citations and quotations omitted).  Counsel cannot be deemed ineffective for failing to raise a meritless claim.  See United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).  To satisfy the prejudice prong, a petitioner must show a reasonable probability that, but for the errors of his or her counsel, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.

The two-prong test for ineffective assistance of counsel as established by Strickland v. Washington, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of the AEDPA.  Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)).[4]  Thus, an

---

[4]  The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong Strickland analysis.  See Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987).

unreasonable application of <u>Strickland</u> by the Pennsylvania courts may entitle a petitioner to federal habeas relief.  <u>See</u> <u>Hackett v. Price</u>, 381 F.3d 281, 287 (3d Cir. 2004); <u>see also</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 129 S. Ct. 823, 831 (2009). Cumulative errors by counsel entitle a petitioner to relief when he can establish the combined effect of those errors resulted in actual prejudice.  <u>Fahy v. Horn</u>, 516 F.3d 169, 205 (3d Cir. 2008) (citing <u>Albrecht v. Horn</u>, 471 F.3d 435, 468 (3d Cir. 2006) and <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993)).

Magistrate Judge Carlson concluded that Jamison is entitled to habeas relief due to what Judge Carlson believes to be a series of unexplained and significant errors by Attorney Fitzkee that cumulatively resulted in actual prejudice to Jamison and significantly undermine confidence in the trial outcome, *to wit*: the failure to object to the weapon and ammunition evidence, the failure to present an alibi defense or request an alibi jury instruction, and the failure to object to a clearly erroneous jury instruction.  (Doc. 54, at 26).  Magsitrate Judge Carlson further concluded that the verdict against Jamison is supported by a weak record and that the Pennsylvania Superior Court made unreasonable findings of fact "in several crucial respects."  (<u>Id.</u> at 26-27).  The Commonwealth objects to many of the characterizations of fact in the R&R, and each of Magistrate Judge Carlson's conclusions that counsel was ineffective.[5]

---

[5]  The Commonwealth presents seven objections to Magistrate Judge Carlson's characterization of the facts. (<u>See</u> Doc. 58, at 10).  The Court will address these objections in the course of its discussion of Magistrate Judge Carlson's legal conclusions.

A.      **Weapon and Ammunition Evidence**

Jamison contends that Attorney Fitzkee was ineffective for failing to object to statements regarding the weapon and ammunition evidence discovered in his home that did not match the crime scene.  The record reveals three distinct and direct references to the weapon and ammunition by the Commonwealth—once in opening and once in closing by the Commonwealth, and in the Commonwealth's case-in-chief by one of fourteen witnesses.  (Doc. 12-3, at 85-86; Doc. 12-6, at 10-11; Doc. 12-7, at 56).  Detective Spence, the witness who testified about the search of Jamison's residence, described the cache of ammunition and semi-automatic handgun discovered.  Immediately thereafter, Detective Spence testified that the evidence did not link Jamison to the crime scene and that initially the police had arrested another individual for the crime.  (Doc. 12-6, at 10-11).

The Pennsylvania Superior Court found the testimony on this evidence "questionable" but not sufficiently prejudicial to warrant relief.  (Doc. 12-3, at 6).  The court explained that in light of the eye witness testimony placing Jamison at the scene with a gun, it did "not find that the admission of evidence showing [Jamison] had a gun and ammunition in his home to be so prejudicial as to warrant a new trial." (Doc. 12-3, at 7).

Magistrate Judge Carlson rejected the Pennsylvania Superior Court's assertion that the admission of the questionable evidence was harmless in light of "multiple witnesses" testifying that Jamison held a gun and shot it into the victim's car.  (See Doc. 54, at 34).  He called this finding "unreasonable" and "literally

incorrect." (Id. at 34 & n.3).  Magistrate Judge Carlson characterized the

presentation of the weapon and ammunition evidence as irrelevant and stated that

"the Commonwealth persisted in repeatedly referring to these firearms at trial,

without objection, and without any explanation of their evidentiary relevance to the

case." (Doc. 54, at 9).  The Commonwealth objects to the this characterization of

the evidence, insisting that the evidence was exculpatory and that the

Commonwealth was compelled to address it squarely to minimize its exculpatory

nature. (Doc. 58, at 24).

The Court agrees with Magistrate Judge Carlson, and finds that the

Pennsylvania Superior Court's ruling was contrary to clearly established federal

law.  In the context of a murder trial, the admission of evidence that the defendant

possessed a weapon and ammunition, when that evidence does not link the

defendant to the crime scene, is highly prejudicial.  In the case *sub judice*,

references to the evidence occurred three times.  Each reference was significant

and prejudicial in that the victim died of gunshot wounds, the murder weapon was

undiscovered, and the only evidence linking Jamison to the killing consisted of two

eyewitnesses who were seeking favorable treatment from the government for their

own criminal conduct.   The likely result of the jury hearing about a stash of

ammunition and a handgun in a murder trial is the impermissible inference that

Jamison was well-equipped to commit the murder despite the absence of any nexus

between the stash and the killing.

The Court flatly rejects the Commonwealth's contention that the weapon and ammunition evidence was exculpatory evidence that the prosecution needed to present in order to provide a full picture of the case.  First, there is precious little about a defendant's possession of a cache of ammunition and a semi-automatic handgun that is exculpatory.  Second, defense counsel could and should have filed a simple motion in limine to preclude the admission of any evidence relating to the search of Jamison's residence, thereby avoiding the subject entirely.  Finally if, as the Commonwealth suggests, it presented testimonial evidence of the weapon and ammunition solely to *minimize* its exculpatory nature, there would have been no need for this exchange between the prosecutor and Detective Spence:  Q: "So you found ammunition for a nine millimeter, a shotgun, a .45, <u>but you only found one gun</u>?"  A: "Right."  (Doc. 12-6, at 10) (emphasis added).  This testimony could easily lead a reasonable jury to infer that Jamison possessed other, as yet undiscovered weapons, including the murder weapon, despite the lack of any physical evidence connecting Jamison's munitions to the murder.  Such an inference is far more prejudicial than probative and the testimony should not have been admitted.

Attorney Fitzkee's failure to object to the admission of Detective Spence's testimony falls below an objective standard of reasonableness.[6]  The Court must

---

[6]  The Pennsylvania Superior Court found the decision not to object "reasonable" because it permitted counsel to elicit testimony from the witness that the evidence did not match the crime scene.  (Doc. 12-3, at 6).  As explained, the highly prejudicial nature of the evidence, in the context of a murder trial, belies the conclusion that the decision not to object was "reasonable."

therefore determine whether Attorney Fitzkee's error caused Jamison actual prejudice. Without hesitation, the Court concludes in the affirmative. See United States v. Morena, 547 F.3d 191 (3d Cir. 2008) (reversal of conviction warranted due to prosecutor's misconduct of repeatedly interjecting inadmissible drug evidence into the trial, thus "permeat[ing] the proceedings with prejudice"); United States v. Himelwright, 42 F.3d 777, 787 (3d Cir. 1994) (reversing conviction after finding firearms evidence marginally relevant to charges of interstate threats and extortionate demands, but concluding that the weapons evidence was prejudicial and should not have been admitted). The Commonwealth presented two eyewitnesses of questionable credibility, both of whom were seeking leniency from the government in exchange for their cooperation at trial. Moreover, neither eyewitness presented a consistent account of what actually transpired.

The Court recognizes that witness credibility determinations are for the trier of fact, and should not be second-guessed by the Court on federal habeas review. See id. at 326; Young v. Grace, No. 3:CV-07-016, 2010 WL 3489046, at *24 (M.D. Pa. Sept. 2, 2010); see also Schlup v. Delo, 513 U.S. 298, 330 (1995). After a jury has made its factual determinations and found a defendant guilty, "the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979). However, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Rolan v. Vaughn,

554 F.3d 671, 682 (3d Cir. 2006) (internal citations and quotations omitted).  Excising references to the weapon and ammunition evidence, what remains is the testimony of two questionable witnesses.  The Court concludes that admission of the weapon and ammunition evidence caused Jamison substantial, actual prejudice.  But for this evidence, there is a reasonable probability that the outcome of trial would have been different.  Habeas relief is warranted on this ground alone.

**B.  The Purported Alibi Defense**

Jamison next contends that Attorney Fitzkee was ineffective for failing to raise an alibi defense or request an alibi instruction on his behalf.  It is undisputed that Attorney Fitzkee noticed the Commonwealth of a potential alibi defense prior to trial but that Attorney Fitzkee did not present an alibi defense at trial and the jury was not instructed on an alibi defense.  The Pennsylvania Superior Court found no error in Attorney Fitzkee's representation, concluding that an alibi was not presented and, therefore, an alibi instruction was unwarranted.  In his R&R, Magistrate Judge Carlson disagreed, finding that the Pennsylvania Superior Court erred in concluding that there was no evidence at trial of an alibi.  (Doc. 54, at 39).  Magistrate Judge Carlson highlighted the testimony of the arresting officer regarding Jamison's initial statement to the police concerning his whereabouts during the early morning hours of July 19, 2000.  (Id.)  The officer testified that:

> [Jamison] denied any involvement.  He stated that on that evening, he rode his bicycle out to Gus's Bar and that he rode right home. . . . . He stated on the evening of July 18th going into the early morning hours of July 19th, he rode his bike to Ultraviolet's Bar. . . . . He left Gus's by

16

> himself right before closing. . . . . He said he rode his bike straight
> home to 51 East Cottage Place.

(Doc. 12-6, at 9-10).  In light of this testimony, Magistrate Judge Carlson concluded

that the Pennsylvania Superior Court's finding that there was no evidence of an

alibi was in error and that "the failure to advance this alibi claim in any fashion was

both objective[ly] unreasonable and potentially prejudicial." (Id.)  The

Commonwealth objects to this conclusion, arguing that "a statement by the

defendant placing him less than three blocks away from the location of the murder

scene, near the time the crime occurred, on a bicycle, consistent with the

Commonwealth's witnesses' testimony that the defendant escaped on a bicycle after

shooting the victim, is not an alibi."  (Doc. 58, at 41).

The Court agrees with the Commonwealth and finds that Attorney Fitzkee

was not ineffective for failing to raise an alibi defense.  Under Pennsylvania law, an

alibi defense "places the defendant at the relevant time in a different place than the

scene involved and so removed therefrom as to render it impossible for him to be

the guilty party." Commonwealth v. Ali, 10 A.3d 282, 316 (Pa. 2010) (quoting

Commonwealth v. Johnson, 966 A.2d 523, 537 n.5 (Pa. 2009)) (quotations omitted).

An alibi instruction is not required when a defendant's testimony places him close

enough to the crime scene so as to not render it impossible that the defendant

committed the crime.  Commonwealth v. Collins, 702 A.2d 540, 545 (Pa. 1997).

Jamison's initial statement to the police regarding his whereabouts on the

night of July 19, 2000 does not establish an alibi.  Jamison's residence was a mere

two and one-half blocks from the scene of the crime.  (Doc. 12-6, at 11-12).  Jamison

claimed that he was at a bar across town and rode his bike straight home near

closing time.  This path and time of travel places Jamison:  (1) near the scene of the

crime, (2) near the time of its commission (around 3:00 a.m), and (3) on a bicycle,

consistent with eyewitness accounts.  Quite clearly, it was not impossible for

Jamison to commit the killing.  Moreover, the notice of alibi defense provided to the

government prior to the start of trial did not relate to Jamison's initial statement to

police.  (See Doc. 12-2, at 19).  According to the December 28, 2007 opinion of the

Superior Court of Pennsylvania affirming the denial of Jamison's second post

conviction relief act petition, the notice of alibi "lists a Kendra Beatty as someone

intended to be called at trial and who would testify that Jamison was at her house

from 2:15 a.m. to 9:00 a.m. on the date of the murder."  (Doc. 12-2, at 19 n.7).  Such

an alibi would likely conflict with Jamison's statement.  Although we lack the

benefit of his insight, the Court does not hesitate to conclude that Attorney Fitzkee

was not ineffective for failing to pursue an alibi defense that did not exist or request

an instruction for a defense he never presented.

### C.    The Erroneous Jury Instruction

Finally, Jamison contends that his counsel was ineffective for failing to object

to the jury instructions on first and third degree murder, which provided the jury

with penalty information for these crimes.  Although recognizing the clear error in

the instructions, the Pennsylvania Superior Court concluded that Jamison was not

prejudiced by counsel's failure to object because counsel for Jamison defended the

case by asserting that witnesses were unreliable and inconsistent, and that others were implicated in the killing. (Doc. 12-2, at 18). In other words, counsel did not defend Jamison on grounds that Jamison lacked the *mens rea* for a murder conviction, instead only satisfying the manslaughter standard; counsel defended Jamison on the grounds that he did not commit the crime at all. Magistrate Judge Carlson, by contrast, found the error, when considered along with defense counsel's other errors, cumulatively had a prejudicial impact on Jamison. (Doc. 54, at 44).

Despite the clear error, the Commonwealth contends that the erroneous jury instruction actually benefitted Jamison, thus, it was not prejudicial and his counsel was not ineffective for failing to object to a beneficial instruction. (Doc. 58, at 44-47). The Pennsylvania Superior Court rejected this argument (see Doc. 12-2, at 17), and so does this Court. The jury instructions which informed the jury about the penalties for first degree and third degree murder are admittedly erroneous. Punishment is a matter for the court, not for the jury to consider during deliberations. (See Doc. 12-2, at 16-17 (citing Commonwealth v. Waters, 483 A.2d 855, 860 (Pa. Super. Ct. 1984))). The case of Reddinger v. Palkovitch, Civil No. 1:CV-04-1030, 2007 WL 4287519 (M.D. Pa. Dec. 4, 2007), cited by the Commonwealth, is distinguishable. In Reddinger, the federal district court declined to grant habeas relief to a petitioner who claimed his trial counsel was ineffective for failing to object to the inclusion of penalty information in the jury instruction for first and third degree murder, when the penalty information for lesser offenses was excluded. At trial, similar to Jamison's case, the defendant was acquitted of first

19

degree murder.  Importantly, in <u>Reddinger</u>, the trial court judge specifically

recalled that, in off-record discussions, counsel for the defendant wanted third

degree murder to appear "more palatable" to the jury; thus, it was a reasonable,

tactical decision by counsel not to object to the penalty instruction.  <u>Id.</u> at *7.  On

this factual basis, the federal district court concluded that the reasonable tactical

decision did not provide grounds for finding ineffective assistance of counsel.  <u>Id.</u>

In the present matter, however, due to Attorney Fitzkee's passing, the reason for

his failure to object to the jury instructions is unknown.  This Court will not assume

the decision was a tactical one, especially in light of trial proceedings in which

counsel clearly attempted to discredit the eyewitness accounts and cast doubt on

whether Jamison committed the crime.

The question therefore becomes whether Jamison was prejudiced by the

instruction, i.e., but for the instruction would the outcome have been different?

The Court concludes that this error, in combination with the prejudicial weapon

and ammunition evidence resulted in actual prejudice to Jamison.  The admission

of the prejudicial weapon and ammunition evidence itself is sufficient to grant

Jamison's petition; in combination with the clearly erroneous jury instruction, there

exists a substantial basis to grant habeas relief.  "[A] verdict or conclusion only

weakly supported by the record is more likely to have been affected by errors than

one with overwhelming record support," <u>Rolan v. Vaughn</u>, 554 F.3d 671, 682 (3d Cir.

2006) (internal citations and quotations omitted).  In light of the errors by counsel

and the problematic eyewitness testimony—the only direct evidence linking

Jamison to the killing—the Court concludes that counsel's errors caused actual prejudice to Jamison and, therefore, undermine confidence in the trial outcome.

In consideration of the foregoing conclusions that Jamison's counsel provided ineffective assistance of counsel in failing to object to the admission of highly prejudicial weapon and ammunition evidence and failing to object to clearly erroneous jury instructions, habeas relief is warranted.

**IV.** <u>**Conclusion**</u>

For the foregoing reasons, the Court will adopt in part and reject in part the magistrate judge's recommendation to grant habeas relief to Jamison. The Court adopts the magistrate judge's conclusion that Attorney Fitzkee provided ineffective assistance of counsel by failing to object to highly prejudicial weapon and ammunition evidence not linked to the killing. The Court also adopts the magistrate judge's conclusion that Attorney Fitzkee provided ineffective assistance of counsel by failing to object to clearly erroneous jury instructions providing the penalties for first and third degree murder. The Court, however, rejects the magistrate judge's conclusion that Attorney Fitzkee erred in failing to present an alibi defense or request an alibi instruction. The purported alibi defense does not establish an alibi, instead placing Jamison within two and one half blocks of the crime scene.

After a full review of the record, it is clear that Jamison received ineffective assistance of counsel that calls into question the outcome of his trial. Therefore, habeas relief is appropriate. The Court will grant Jamison's petition for writ of

habeas corpus and remand this matter to the Court of Common Pleas of York

County, Pennsylvania for a new trial.

An appropriate order will issue.


_S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge


Dated:      July 6, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PHILMINGO JAMISON,** | : | **CIVIL ACTION NO. 1:08-CV-1405** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN KERESTES, ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA and YORK** | : | |
| **COUNTY DISTRICT ATTORNEY** | : | |
| | : | |
| **Respondents** | : | |

## ORDER

AND NOW, this 6th day of July, 2011, upon consideration of the report of the magistrate judge (Doc. 54), wherein the magistrate judge recommends that the petition for writ of habeas corpus (Doc. 1) filed by Philmingo Jamison be granted and the matter be remanded to the Court of Common Pleas of York County, Pennsylvania, and upon further consideration of the objections to the report and recommendation (Doc. 58) filed by the Commonwealth of Pennsylvania, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.   The report of the magistrate judge (Doc. 54) is ADOPTED in part, and REJECTED in part as follows:

    a.   The report is rejected to the extent that it concludes defendant's counsel was ineffective for failing to present an alibi defense or request an alibi instruction.

    b.   The report is adopted in all other respects.

2.      The petition for writ of habeas corpus (Doc. 1) is GRANTED.

3.      The matter is remanded to the Court of Common Pleas of York County, Pennsylvania for a new trial.

4.      The Clerk of Court is directed to CLOSE the case.



   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge